STATE OF NORTH CAROLINA v. LOUISE KOLAR BENBOW

No. COA04-785

(Filed 5 April 2005)

**Courts; Motor Vehicles— jurisdiction—district court—driver's license reinstatement**

The district court did not have jurisdiction to exempt defendant from the ignition interlock requirement where defendant was seeking reinstatement of her driver's license after having it revoked for driving with an alcohol concentration of 0.16. Although defendant had obtained an exemption for her limited driving privilege because medical conditions prevented her use of the device, N.C.G.S. § 20-17.8 does not provide any exceptions to the requirement for license reinstatement.

Appeal by the State from an order entered 22 March 2004 by Judge Mitchell L. McLean in Yadkin County District Court. Heard in the Court of Appeals 2 February 2005.

*Attorney General Roy A. Cooper, III, by Assistant Attorneys General Allison A. Pluchos and Jeffrey R. Edwards, for the State.*

*Shore, Hudspeth & Harding, P.A., by Donna Shore Terrell, for defendant-appellee.*

HUNTER, Judge.

Under N.C. Gen. Stat. § 20-17.8 (2003), an individual who has been convicted of driving while intoxicated with a blood alcohol level of 0.16 or more is subject to a mandatory ignition interlock license restriction if the person's license is reinstated following the revoca-

tion period. In this case, the North Carolina Division of Motor Vehicles ("DMV") appeals the trial court's order compelling them to issue a license to Louise Kolar Benbow ("defendant") without the required ignition interlock device. DMV contends the district court: (I) lacked jurisdiction to enter an order compelling them to perform an act in violation of statute; (II) violated the constitutional separation of powers by exempting defendant from the statutory ignition interlock requirement; and (III) erred by ordering DMV to reinstate defendant's driver's license without the required ignition interlock restriction. Under the facts of this case, we conclude the trial court erroneously ordered DMV to reinstate defendant's driver's license without the requisite ignition interlock device.

The pertinent facts indicate that defendant was charged with driving while impaired on 16 March 2002. A chemical test of defendant's breath showed an alcohol concentration of 0.16. Defendant was convicted of driving while impaired on 13 November 2002 and was granted an interlock limited driving privilege, which allowed defendant to operate a motor vehicle under certain restrictions. On 13 December 2002, defendant had an ignition interlock device installed on her car. Four days later, she had the device removed because she could not provide a sufficient breath sample for testing by the instrument. On 21 January 2003, Dr. Patrick Healy provided defendant with a medical note which indicated: "She is unable to operate the device on her car to monitor her breathing. She has a cleft palate & a prior history of asthma; these issues may be a factor in her inability to use her breathing force to activate the device." In April 2003, defendant filed a motion to modify her limited driving privilege. On 2 April 2003, the trial court entered an order exempting defendant from the ignition interlock requirement and defendant received a modified limited driving privilege that did not contain the ignition interlock requirement. Defendant's one year revocation period ended on 13 November 2003.

In March 2004, defendant sought reinstatement of her driver's license. She was informed by DMV that she was required by law to have an ignition interlock restriction on her driver's license because she had a blood alcohol level of 0.16 at the time of her driving while impaired arrest. In a 22 March 2004 order, the trial court exempted defendant from the ignition interlock requirement and ordered DMV to reinstate her driver's license without the ignition interlock restriction. DMV appeals.

STATE v. BENBOW

[169 N.C. App. 613 (2005)]

Defendant was convicted of impaired driving under N.C. Gen. Stat. § 20-138.1 (2001), which provides:

A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.

*Id.* Therefore, under N.C. Gen. Stat. § 20-17(a)(2), defendant's driver's license was subject to mandatory revocation.[1] Pursuant to statute, defendant's license was revoked for one year commencing on 13 November 2002 and ending on 13 November 2003. *See* N.C. Gen. Stat. § 20-19(c1) (2001) (stating "[w]hen a license is revoked under subdivision (2) of G.S. 20-17, and the period of revocation is not determined by subsection (d) or (e) of this section, the period of revocation is one year").

After conviction, the trial court issued defendant an interlock limited driving privilege, which was effective from 13 November 2002 to 13 November 2003. Under N.C. Gen. Stat. § 20-179.3 (2001), a person convicted of driving while impaired may, under certain circumstances, seek a limited driving privilege which would allow a person to drive for essential purposes related to employment, household maintenance, education, court-ordered treatment or assessment, community service ordered as a condition of probation, or emergency medical care. N.C. Gen. Stat. § 20-179.3(g5) (2001) indicates that if a person's driver's license is revoked for a conviction of N.C. Gen. Stat. § 20-138.1, and the person had an alcohol concentration of 0.16 or more, a judge shall include the use of an interlock ignition device in the limited driving privilege. However, N.C. Gen. Stat. § 20-179.3(i) indicates the limited driving privilege may be modified. N.C. Gen. Stat. § 20-179.3(i) (2001) provides:

Modification or Revocation of Privilege.—A judge who issues a limited driving privilege is authorized to modify or revoke the limited driving privilege upon a showing that the circumstances have

---

1. N.C. Gen. Stat. § 20-17(a)(2) (2001) provides "[t]he [DMV] shall forthwith revoke the license of any driver upon receiving a record of the driver's conviction for any of the following offenses: . . . (2) [e]ither of the following impaired driving offenses: a. [i]mpaired driving under G.S. 20-138.1 [or] b. [i]mpaired driving under G.S. 20-138.2."

changed sufficiently to justify modification or revocation. . . . The judge must indicate in the order of modification or revocation the reasons for the order, or he must make specific findings indicating the reason for the order and those findings must be entered in the record of the case.

*Id.* In this case, defendant was convicted under N.C. Gen. Stat. § 20-138.1 (2001) and she had an alcohol concentration of 0.16. The judge granted her an interlock limited driving privilege which required her to use the ignition interlock device. Upon a showing that defendant could not use the ignition interlock device due to medical conditions substantiated by a doctor's note, the trial court modified the interlock limited driving privilege to exempt defendant from complying with the ignition interlock device pursuant to N.C. Gen. Stat. § 179.3(i) (2001). This limited driving privilege expired on 13 November 2003, at the conclusion of the one year revocation period imposed after defendant's conviction. DMV does not challenge the trial court's authority to modify the interlock limited driving privilege in this manner.

DMV does challenge the trial court's actions after defendant's revocation period ended. After defendant's one-year revocation period ended on 13 November 2003, she contacted DMV to have her driver's license restored. Under N.C. Gen. Stat. § 20-17.8 (2003)[2], when DMV restores the license of a person convicted of driving while impaired under N.C. Gen. Stat. 20-138.1 and the person had an alcohol concentration of 0.16 or more, the use of an ignition interlock device is required. Specifically, N.C. Gen. Stat. § 20-17.8 (2003) states in pertinent part:

(a) Scope.—This section applies to a person whose license was revoked as a result of a conviction of driving while impaired, G.S. 20-138.1, and:

(1) The person had an alcohol concentration of 0.16 or more; or

(2) The person has been convicted of another offense involving impaired driving, which offense occurred within seven years immediately preceding the date of the offense for which the person's license has been revoked.

2. The 2001 North Carolina General Statutes are applicable to defendant's conviction for driving while impaired and sentence. The 2003 version of our General Statutes apply to defendant's application for reinstatement of her driving privileges.

STATE v. BENBOW

[169 N.C. App. 613 (2005)]

(b)· Ignition Interlock Required.—When the Division restores the license of a person who is subject to this section, in addition to any other restriction or condition, it shall require the person to agree to and shall indicate on the person's drivers license the following restrictions for the period designated in subsection (c):

(1) A restriction that the·person may operate only a vehicle that is equipped with a functioning ignition interlock system of a type approved by the Commissioner. . . .

(2) A requirement that the person personally activate the ignition interlock system before driving the motor vehicle.

*Id.* Under the circumstances of defendant's case, she was required to use the ignition interlock device for one year from the date of restoration of her driver's license. *See* N.C. Gen. Stat. § 20-17.8(c)(1) (2003). N.C. Gen. Stat. § 20-17.8 (2003) does not provide any exceptions to the mandatory ignition interlock device.[3] Upon being informed she had to use the ignition interlock device, defendant moved the trial court in her driving while impaired case to exempt her from this requirement, and the trial court entered an order exempting defendant from the requirement on 22 March 2004.

DMV contends the district court did not have jurisdiction to exempt defendant from the requirements of N.C. Gen. Stat. § 20-17.8 (2003). We agree.

"Proceedings involving the suspension or revocation of a license to operate a motor vehicle are civil and not criminal in nature . . . ." *Joyner v. Garrett, Comr. of Motor Vehicles,* 279 N.C. 226, 234, 182 S.E.2d 553, 559 (1971). Pursuant to N.C. Gen. Stat. § 20-25 (2003):

Any person denied a license or whose license has been canceled, suspended or revoked by the Division, except where such cancellation is mandatory under the provisions of this Article, shall have a right to file a petition within 30 days thereafter for a hearing in the matter in the superior court of the county wherein such person shall reside, or to the resident judge of the district or judge holding the court of that district, or special or emergency judge holding a court in such district in which the violation was

---

3. There is no review process under N.C. Gen. Stat. § 20-17.8 which would allow defendant to present her arguments to DMV. N.C. Gen. Stat. § 20-17.8(j) governs appeals of a DMV decision in cases where a person has violated the requirements of N.C. Gen. Stat. § 20-17.8. It does not govern instances where a person seeks an exemption from the requirement.

committed, and such court or judge is hereby vested with juris-
diction and it shall be its or his duty to set the matter for hearing
upon 30 days' written notice to the Division, and thereupon to
take testimony and examine into the facts of the case, and to
determine whether the petitioner is entitled to a license or is sub-
ject to suspension, cancellation or revocation of license under the
provisions of this Article. Provided, a judge of the district court
shall have limited jurisdiction under this section to sign and enter
a temporary restraining order only.

*Id.* At the time defendant moved the court to exempt her from the
ignition interlock requirement, her criminal case had concluded.
Nonetheless, N.C. Gen. Stat. § 20-25 allowed her to petition the dis-
trict court in the district where her violation occurred to review
DMV's decision not to reinstate her driver's license without the requi-
site ignition interlock device. Although the district court had jurisdic-
tion to review the decision, certain conditions applied. First, DMV
had to be notified of the petition and had to be provided thirty days
written notice of the hearing. In this case, DMV was not notified of
defendant's motion and did not receive notice of the hearing. Second,
there is no right to appeal to a court where the cancellation of the
license is mandatory, and the provisions of N.C. Gen. Stat. § 20-17.8
are mandatory. Thus, the district court could not review DMV's deci-
sion under N.C. Gen. Stat. § 20-25.

Defendant contends the district court had the inherent author-
ity to review DMV's decision. However, our Supreme Court has
held only that a "court has inherent authority to review the *discre-
tionary* action of any administrative agency . . . ." *In re Revocation of
License of Wright*, 228 N.C. 584, 587, 46 S.E.2d 696, 698 (1948)
(emphasis added). In this case DMV's decision was not discretionary;
rather, it was required under the mandatory provisions in N.C. Gen.
Stat. § 20-17.8.

Accordingly, as the criminal case had concluded and the district
court did not have jurisdiction under N.C. Gen. Stat. § 20-25, the dis-
trict court erroneously exempted defendant from the ignition inter-
lock requirement. Moreover, even assuming the district court had
jurisdiction, DMV did not have notice of the proceedings as required
by statute.

As indicated by DMV in their brief to this Court, there are prop-
er procedures for challenging the validity of a statute, which defend-
ant may pursue in a different proceeding. In addition, the General

BASNIGHT CONSTR. CO. v. PETERS & WHITE CONSTR. CO.

[169 N.C. App. 619 (2005)]

Assembly may want to review this matter. As we have concluded the trial court lacked jurisdiction, we do not address the parties' remaining arguments.

Reversed.

Judges CALABRIA and JACKSON concur.